# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        Plaintiff,

  v.                                               Case No. 06-CR-168

**JOSE CAMPOS-CERVANTES**
        Defendant.

## SENTENCING MEMORANDUM

Defendant Jose Campos-Cervantes pleaded guilty to unlawfully re-entering the United States after removal. 8 U.S.C. § 1326(a)(2) & (b)(2). The probation office prepared a pre-sentence report ("PSR"), setting defendant's offense level at 21 (base level 8, U.S.S.G. § 2L1.2(a), plus 16 based on defendant's previous conviction of a controlled substance offense for which the sentence imposed exceeded 13 months, § 2L1.2(b)(1)(A), minus 3 for acceptance of responsibility, § 3E1.1) and his criminal history category at V, producing an imprisonment range of 70-87 months under the sentence guidelines. Defendant requested a sentence substantially below the range, while the government advocated a term at the low end. Upon consideration of all of the factors in 18 U.S.C. § 3553(a), I imposed a sentence of 48 months. This memorandum sets forth the reasons for the sentence imposed.

## I. SENTENCING FACTORS

"When sentencing a defendant, a district court must consider all sentencing factors enumerated in 18 U.S.C. § 3553(a)." United States v. Harris, 490 F.3d 589, 593 (7th Cir. 2007). Those factors include:

    (1)    the nature and circumstances of the offense and the history and

characteristics of the defendant;

(2) the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the sentencing guideline range;

(5) any pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The statute directs the court, after considering these factors, to impose a sentence that is sufficient but not greater than necessary to satisfy the purposes of sentencing – just punishment, deterrence, protection of the public and rehabilitation of the defendant. Id. In making this determination, the district court may not presume that the guideline sentence is the correct one, Rita v. United States, 127 S. Ct. 2456, 2465 (2007); United States v. Demaree, 459 F.3d 791, 794-95 (7th Cir. 2006), cert denied, 127 S. Ct. 3055 (2007), but rather "must sentence based on 18 U.S.C. § 3553(a) without any thumb on the scale favoring a guideline sentence." United States v. Sachsenmaier, 491 F.3d 680, 685 (7th Cir. 2007); see also United States v. Schmitt, No. 06-2207, 2007 U.S. App. LEXIS 18662, at *10-14 (7th Cir. Aug. 7, 2007).

2

## II.  DISCUSSION

As noted above, this case involved defendant's violation of immigration laws in returning to the United States after he was deported for an aggravated felony.  Defendant was born in Mexico in 1968.  He first came to this country illegally in 1991, even though he reportedly had a good job in Mexico (unlike many others who come here to escape poverty).  According to the PSR, since he was young and had no ties, he decided to go to California, where he lived with his aunts and worked without a social security number.  It appeared that he met his future wife there.

On November 8, 1993, defendant was convicted in California of possession of cocaine for sale and placed on probation for three years with one year in jail as a condition.  In January 1995, the California court revoked defendant's probation and sentenced him to two years in prison. Following his parole on August 1, 1995, immigration authorities removed defendant on August 28, 1995.  His future wife went back to Mexico with him, but she later returned to the Los Angeles area while he remained in Mexico.  She was pregnant with defendant's child, and he returned to the United States just before her due date in 1997.  However, rather than joining her in California, he proceeded to Wisconsin, as he had friends and heard that there was work in the state.  It was not clear precisely when he returned to the United States, but it must have been prior to April 15, 1997, because he received a traffic ticket in Janesville, Wisconsin on that date.  Defendant's wife and child eventually joined him in Wisconsin, and they lived in this state since then.  They married in 2005, and at the time of sentencing had three children together, ages ten, three, and one.

Defendant accumulated a fairly significant record since his return to the United States, yet he was not found by immigration authorities until 2006.  On May 10, 2001, he was convicted

3

of drunk driving; on October 31, 2001, he was convicted of disorderly conduct; on March 12, 2003, he was convicted of second offense drunk driving; and on August 28, 2003 he was convicted of battery to his then six year old son. On June 21, 2006, following a traffic stop, immigration authorities were notified and interviewed defendant on June 22, 2006, learning that he was in the country illegally, leading to the instant prosecution.

There were positives since his return. Defendant lived with and supported his family for much of that time, although apparently there was some separation after his battery conviction. His wife wrote a positive letter, indicating that he was a good husband, father and provider. She planned to join him in Mexico after his removal at the conclusion of this matter. Defendant also compiled a solid employment history since his re-entry, working for Generac from 1997 to 2000 and Eagle Auto Salvage from 2000 to 2006. I received a positive letter from his supervisor at Eagle, who stated that he was a valuable, hard-working employee.

The guidelines recommended a term of 70-87 months, but I found that range somewhat greater than necessary. First, as I have noted in previous illegal re-entry cases, an important factor for the court to consider is the defendant's motive in re-entering. If he came back to this country because of strong ties or to be with his family, and if he behaved in an otherwise pro-social manner upon return, the case is mitigated and the guidelines, which do not consider motive, may produce a sentence greater than necessary to provide just punishment. On the other hand, if he returned to commit more crimes, the case is aggravated. See, e.g., United States v. Salazar-Hernandez, 431 F. Supp. 2d 931, 935 (E.D. Wis. 2006). In the instant case, defendant returned to the United States to be re-united with his family, which is a mitigating factor. I also considered his solid employment history after his return to be a mitigating factor. However, his criminal record after he returned was a cause for concern, as was the fact that

4

one of those convictions involved abuse of his son. Even though there was no evidence that defendant had returned to drug dealing since his re-entry, he had not remained crime free. Thus, while I believed that some consideration for defendant's motive was warranted, I did not give that factor great weight.

Second, I concluded that the guideline range somewhat overstated the severity of defendant's record and the danger he presented to the public. The 1993 drug conviction and the revocation sentence on it had a profound impact on the range in this case. Had the sentence on that case been 13 months or less, the offense level enhancement under U.S.S.G. § 2L1.2(b)(1) would have been 12 rather than 16, and the criminal history points assessed for this conviction 2 rather than 3. Further, the 1993 offense resulted in the imposition of 3 more criminal history points under U.S.S.G. §§ 4A1.1(d) & (e) because defendant re-entered while on parole in that case and within two years of his release from that sentence. I did not think that the 1993 case, which involved a small amount of powder cocaine, could really bear the weight of all of these guideline enhancements. Section 4A1.3(b) of the guidelines allows the court to reduce a criminal history category that substantially over-states the seriousness of the defendant's record and the likelihood that he will re-offend, and I considered this policy statement under § 3553(a)(5). While defendant's record was serious, defendant did not seem comparable to most category V offenders I have seen. Finally, this appeared to be a case in which the 16 level enhancement under § 2L1.2(b)(1) was somewhat excessive. As indicated, the 1993 case involved a modest amount of powder cocaine, there was no indication of violence or weapon possession in that case, and the sentencing judge originally saw fit to put defendant on probation. Given that defendant had not re-involved himself with drug dealing and had behaved in a largely pro-social way since 1993, I found that the guideline range

5

produced a sentence greater than necessary to protect the public. See United States v. Galvez-Barrios, 355 F. Supp. 2d 958, 962-63 (E.D. Wis. 2005).

Thus, I concluded that a sentence below the range would be sufficient to satisfy the purposes of sentencing. However, a significant period of confinement was needed to promote respect for immigration law and deter defendant from re-offending. Defendant also presented some risk of recidivism given his record. The PSR mentioned some issues with alcohol abuse, but I did not see other rehabilitative needs.

In his initial sentencing memorandum, defendant argued that it was in no one's interest to imprison him, that his family would suffer, and that he should receive a sentence of time served, which would hasten his return to Mexico. Defendant had only been in custody for about one year by the time of sentencing, and a sentence of that length would unduly depreciate the seriousness of the crime and fail to promote respect for the law. Congress has clearly indicated its intent that aliens who unlawfully re-enter after committing serious felonies be severely punished. I also had to consider the need to deter others in defendant's situation. And while I accepted that the effects on defendant's family were considerable, no reasonable sentence could re-unite defendant with his family in the immediate future under the circumstances. Thus, while a guideline sentence was somewhat greater than necessary, defendant's initial recommendation was plainly insufficient.

In a later submission, defendant asked for a 7 level reduction under the guidelines, which produced a range of 33-41 months. For the reasons stated, I also concluded that such a sentence would provide insufficient punishment and deterrence. In this submission, defendant also asked me to consider the disparity created by this district's lack of a fast-track program. However, the Seventh Circuit has disapproved of reducing sentences on this basis

6

under § 3553(a)(6). See United States v. Rodriguez-Rodriguez, 453 F.3d 458, 462-63 (7th Cir. 2006). In any event, even if I could consider this factor, under the circumstances of this case, which dragged on, I would not have granted a fast-track reduction. See United States v. Jimenez-DeGarcia, 481 F. Supp. 2d 946, 952 (E.D. Wis. 2007) (citing United States v. Peralta-Espinoza, 383 F. Supp. 2d 1107, 1112 (E.D. Wis. 2005) (denying fast-track reduction in the exercise of discretion)).

Instead, under all of the circumstances, I found a sentence of 48 months sufficient but not greater than necessary. This sentence provided substantial punishment while accounting for the mitigating factors discussed. Because the sentence was based on the particular facts of the case and supported by the Commission's policy statement 4A1.3(b), it did not create unwarranted disparity.

### III. CONCLUSION

Therefore, I committed defendant to the custody of the Bureau of Prisons for 48 months. I recommended that he participate in any alcohol abuse treatment programs available. Upon release, I ordered him to serve a two year supervised release term, the conditions of which appear in the judgment.

Dated at Milwaukee, Wisconsin, this 27th day of August, 2007.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge